**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 25-4226**

───────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

THOMAS EMMANUEL WILLIAMS,

Defendant – Appellant.

───────────

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Theodore D. Chuang, District Judge. (8:23-cr-00380-TDC-1)

───────────

Submitted: June 26, 2026                          Decided: July 28, 2026

───────────

Before AGEE, HARRIS, and RICHARDSON, Circuit Judges.

───────────

Affirmed by unpublished per curiam opinion.

───────────

**ON BRIEF:**  Mirriam Z. Seddiq, SEDDIQ LAW FIRM, Rockville, Maryland, for Appellant.  Kelly O. Hayes, United States Attorney, David C. Bornstein, Assistant United States Attorney, Alexandria A. Bell, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Over three weeks, Thomas Williams sold a confidential informant ten firearms, three machinegun-conversion devices, and controlled substances. The informant told Williams just what the guns were for: resale in New York to people who could not buy them legally. A jury convicted him of several firearm- and drug-related offenses, and the district court applied a firearms-trafficking enhancement at sentencing. Because the evidence permitted the jury to find each challenged element and the district court did not clearly err in applying the enhancement, we affirm.

## I.    BACKGROUND

In January and February of 2023, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) investigated Thomas Williams for firearms trafficking, relying on a confidential informant, Osvaldo Latorre, to conduct four controlled purchases of firearms.

As cover, Latorre told Williams that he had recently been released from prison and now dealt in drugs and firearms. Latorre explained that his plan was to buy guns from Williams in Maryland to resell to New York drug dealers who "can't buy guns legally." J.A. 663. He emphasized that drug purchases were strictly for "business, to flip money," not for "personal" use. J.A. 717. Latorre stuck to this script throughout their interactions: During the one purchase, he warned Williams about wiping his fingerprints off the guns, because he wasn't sure how his buyers would use them. And, after a purchase, he complained to Williams that he'd had to refund a buyer because a firearm lacked the promised "switch" that would convert it into a fully automatic firearm. And, during the

2

third purchase, Latorre even staged a phone call with a buyer to negotiate a resale price in front of Williams.

Williams sold Latorre ten firearms and three Glock switches. At the second controlled purchase, Williams also offered to sell narcotics, which Latorre declined. But at the third and fourth controlled purchases, Williams sold Latorre both controlled substances and firearms.

Williams was later charged with twelve counts of drug- and firearm-related offenses. At the close of the Government's case, Williams moved for a judgment of acquittal on all counts, Fed. R. Crim. P. 29(a), and renewed the motion after closing arguments. The jury convicted him on all twelve. Williams renewed his motion once more, Fed. R. Crim. P. 29(c), and the district court granted it as to Count Twelve but denied it as to the rest. J.A. 1004–20. At sentencing, the court applied the five-level trafficking enhancement in U.S.S.G. § 2K2.1(b)(5)(C)(i)(III) (2024) and imposed 204 months' imprisonment.[1] On appeal, he renews his challenges to three sets of convictions and the Guidelines enhancement.

## II.    DISCUSSION

We review questions of statutory interpretation and the district court's denial of a Rule 29 motion for judgment of acquittal *de novo*. *United States v. Kiza*, 855 F.3d 596, 601 (4th Cir. 2017). But our review of the evidence is sharply constrained: "we assess the

---

[1] This sentencing enhancement has since been moved to subsection (b)(6), with no change to its text. *See* U.S.S.G. § 2K2.1(b)(6)(C)(i)(III) (2025). We refer to the enhancement by its 2024 designation in the opinion.

3

evidence in the light most favorable to the government, and the jury's verdict must stand unless we determine that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Watkins*, 111 F.4th 300, 308 (4th Cir. 2024) (citing *United States v. Royal*, 731 F.3d 333, 337 (4th Cir. 2013)).

### A.    Counts One And Eight

Williams claims there was insufficient evidence to convict him for firearm trafficking under 18 U.S.C. § 933(a)(1)[2] because he lacked "reasonable cause to believe" Latorre's use of the firearms would "constitute a felony."  He makes a similar argument for his § 922(d)(10)[3] conviction, claiming he lacked "reasonable cause to believe that" Latorre "intend[ed] to sell or otherwise dispose of the firearm . . . in furtherance of a felony . . . or a drug trafficking offense."  He claims that because the "firearms were sold to an agent of the government," such that no resulting felony was possible, he could not have had reasonable cause to believe one would occur.  Opening Br. at 15.

But the government only needed to prove that the defendant had "reasonable cause to believe" Latorre's use would be felonious and intended disposal was in furtherance of a felony, not that his belief was true.  *See United States v. Colicchio*, 470 F.2d 977, 979 (4th

---

[2] "It shall be unlawful for any person to . . . ship, transport, transfer, cause to be transported, or otherwise dispose of any firearm to another person in or otherwise affecting interstate or foreign commerce, if such person knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony."

[3] "It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . intends to sell or otherwise dispose of the firearm or ammunition in furtherance of a felony, a Federal crime of terrorism, or a drug trafficking offense."

Cir. 1972); *United States v. Ferrari*, 170 F.4th 1225, 1237 (9th Cir. 2026).  The district court instructed the jury that "reasonable cause to believe" something means "knowledge of facts which, although not amounting to direct knowledge, would cause a reasonable person, knowing the same things, to reasonably conclude" that thing.  J.A. 836–37.

The evidence supported the required findings.  Williams knew how Latorre planned to use the firearms—and how, in Latorre's telling, he had already used earlier-purchased ones—because Latorre had *told him*, both before and during the purchases.  Latorre presented himself as an enterprising ex-convict who resold firearms to drug dealers who could not legally purchase them.  He stuck to this script throughout:  He complained that the firearms didn't meet his buyers' expectations, staged a call with a buyer in front of Williams, and even warned Williams to wipe his fingerprints off the firearms to avoid "get[ting] caught up" in the downstream buyers' activities.  J.A. 678.  Latorre's cover story thus included felonious use, supporting Williams's conviction under 18 U.S.C. § 933(a)(1):  Latorre received firearms as part of illegal trafficking in firearms, 18 U.S.C. § 933(a)(2), and engaged in the business of dealing firearms without a license, § 922(a)(1)(A).  And Latorre's reselling to drug dealers who could not legally purchase firearms would also be in furtherance of his own felony offense of selling firearms to prohibited persons, in violation of § 922(d)(1).

The jury also had sufficient basis to infer from Williams's actions that he believed this cover story.  For instance, he offered bulk discounts on firearms purchases, consistent with expecting Latorre to resell rather than keep the guns for himself.  And none of Williams's actions indicated that he knew Latorre was a government agent.  To the

5

contrary, he took precautions to avoid police when dealing with Latorre, including changing the meeting location if he thought he saw undercover officers in the vicinity. Latorre's undisclosed status as an informant did not erase what Williams had reasonable cause to believe from the facts known to him.  We therefore affirm the convictions on Counts One and Eight.[4]

### B.     Counts Four And Nine

Williams next challenges his two convictions for possessing a machinegun.  *See* 18 U.S.C. § 922(o).  He says the Glock switches were not "machineguns."  But the statutory definition does not stop at weapons.  It "shall also include" "any part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun."  26 U.S.C. § 5845(b); *see* 18 U.S.C. § 921(a)(24) (adopting that definition); *see also United States v. Williams*, 364 F.3d 556, 557 (4th Cir. 2004).[5]  So the only question is whether a rational

---

[4] For the same reasons, his challenge to his sentence enhancement also fails.  *See Gall v. United States*, 552 U.S. 38, 41 (2007) (noting we review for an abuse of discretion). Section 2K2.1(b)(5)(C)(i)(III) of the Guidelines applies if the defendant sold or otherwise disposed of "two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who . . . intended to use or dispose of the firearms unlawfully."  Testimonial evidence showed that Williams sold Latorre ten firearms.  Latorre's cover story gave Williams that reason to believe before the first sale.  And certainly by January 19—when Latorre complained that he had to refund a buyer because a promised machinegun switch never materialized—Williams knew what kind of customer he was serving.  The district court did not clearly err in finding that Williams sold more than two firearms while having reason to believe that Latorre intended to use or dispose of the firearms unlawfully.

[5] Williams argues for the first time on appeal that machinegun is ambiguous, so the rule of lenity should apply.  This new argument cannot survive the demanding plain-error-review standard.  *See United States v. Treisman*, 71 F.4th 225, 235 n.7 (4th Cir. 2023).  No grievous ambiguity lurks in a definition whose plain language we have already held covers conversion parts.  *See Williams*, 364 F.3d at 557–58

6

jury could find that these switches were designed and intended solely and exclusively for conversion.

At trial, an ATF expert explained that the particular switches were "designed specifically to be swapped out with the Glock-sized rear back plate and fit that particular design," J.A. 587, and that doing so allowed him to "successfully convert[] a semiautomatic pistol into [a] fully automatic" one, J.A. 566. The expert explained that while a Glock normally resets its trigger between shots, the switch allows the Glock to "fire the entire capacity of [the] gun" after pulling the trigger only "one time." J.A. 578–79. That testimony supplied sufficient evidence of the devices' exclusive design and purpose. The expert did not need to recite the statutory phrase—"designed and intended solely and exclusively." From the devices' specialized fit and demonstrated operation, a rational jury could infer that they were designed and intended solely and exclusively to convert a Glock pistol into a machinegun. *Cf. United States v. Speed*, 175 F.4th 272, 282 (4th Cir. 2026) ("if something walks like a silencer, swims like a silencer and quacks like a silencer, a reasonable jury could have found the device was a silencer").

C.      **Count Six**

Next, Williams challenges the sufficiency of the evidence that, when he committed a drug trafficking crime on January 27, 2023, he (1) used a firearm "during and in relation to" that crime or (2) possessed a firearm "in furtherance" of that crime. 18 U.S.C. § 924(c)(1)(A)[6]; J.A. 855 (jury instructions charging both theories). Specifically, he

---

[6]"[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States,

7

challenges whether a jury could find that he used a firearm "in relation to" the charged drug crime.

A firearm is used "in relation to" a drug trafficking crime when it has "some purpose or effect with respect to the drug trafficking crime." *United States v. Lipford*, 203 F.3d 259, 266 (4th Cir. 2000) (cleaned up). The gun must "facilitate or have the potential of facilitating" the crime. *Id.* Its presence "cannot be the result of accident or coincidence," such as if it is spontaneously offered during a drug sale. *United States v. Wilson*, 115 F.3d 1185, 1191–92 (4th Cir. 1997). In *Lipford*, we held that the "in relation to" element is satisfied where the firearm and drugs were negotiated together in advance in a planned transaction, such that the firearm "had at least the potential of attracting [the defendant] into making the sale of drugs." 203 F.3d at 267. The potential for attraction is even stronger here. Latorre bought only firearms in the first two purchases, even declining the offer to buy drugs. A jury could find that the firearms drew Latorre to Williams, creating the sustained relationship that let Williams later sell drugs to Latorre. Indeed, Williams sold the firearms and drugs as part of a package deal, sometimes pressuring Latorre to buy more drugs than he wanted. Because of the sequencing and content of the transactions, a jury could find that the firearms sold in the latter two transactions enticed Latorre to also buy drugs from Williams, thus facilitating the drug trafficking crime.

---

uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . be sentenced to a term of imprisonment . . . ."

8

9

\*     \*     \*

A rational jury could find every challenged element beyond a reasonable doubt. And the district court did not clearly err in applying the trafficking enhancement. The judgment is

*AFFIRMED*.